Ninth Circuit Court of Appeals No. 08-30434

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee

vs.

BASIL PETER HERBST,

Defendant-Appellant

---

OPENING BRIEF OF DEFENDANT-APPELLANT

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION
DISTRICT COURT NO. CR-07-103-BLG-JDS

HONORABLE JACK D. SHANSTROM
SENIOR UNITED STATES DISTRICT JUDGE

ANTHONY R. GALLAGHER
Federal Defender, District of Montana
*DAVID A. MERCHANT II
Deputy Federal Defender
Federal Defenders of Montana
P. O. Box 1778
Billings, MT 59103
Telephone: (406) 259-2459
*Counsel for Defendant-Appellant

SUBMITTED: April 10, 2009

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-vi

I.     STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

       A.     Subject Matter Jurisdiction in the District Court. . . . . . . . . . . . . 1-2

       B.     Jurisdiction in the Court of Appeals. . . . . . . . . . . . . . . . . . . . . . . . 2

       C.     Appealability of District Court Order and Timeliness of the 2
              Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    STATEMENT OF THE ISSUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

       A.     Nature of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.     Course of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

       C.     Disposition in the District Court.. . . . . . . . . . . . . . . . . . . . . . . . . . 4

       D.     Bail Status of Defendant-Appellant  . . . . . . . . . . . . . . . . . . . . . . . 4

IV.    STATEMENT OF THE PERTINENT FACTS. . . . . . . . . . . . . . . . . . 5-8

V.     SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

VI.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-16

VII.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VIII.  CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . 18

IX.   STATEMENT OF RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

X.    CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

iii

# TABLE OF AUTHORITIES

## <u>TABLE OF CASES</u>

<u>Gall v. United States</u>,
     552 U.S. __, 128 S. Ct. 586 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Rita v. United States</u>,
     552 U.S. __, 127 S. Ct. 2456 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

<u>Simon v United States</u>,
     361 F. Supp. 2d 35 (E.E. N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>United States v. Barsumyan</u>,
     517 F.3d 1154 (9th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>United States v. Booker</u>,
     543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 11, 12, 13

<u>United States v. Cantrell</u>,
     433 F.3d 1269 (9th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

<u>United States v. Carty</u>,
     520 F.3d 984 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>United States v. Carvahal</u>,
     2005  WL 576125 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

<u>United States v. Carvajal</u>,
     WL 476125 (S.D.N.Y. Feb, 222, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>United States v. Denardi</u>,
     892 F.2d 269 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>United States v. Knows His Gun</u>,
     438 F.3d 913 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Menyweather,
   447 F.3d 625 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Mohamed,
   459 F.3d 979 (9th Cir.2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## **STATUTES AND RULES**

## **FEDERAL RULES OF APPELLATE PROCEDURE**

Fed.R.App.P. 25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 4(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## **FEDERAL RULES OF CRIMINAL PROCEDURE**

Rule 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## **UNITED STATES CODE**

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C.  § 2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §2251(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2252A(5)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2252A(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2252A(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13, 15,16

18 U.S.C. § 3553(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3553(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3553 (A)(2)(D).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 3553(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## RULES OF THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Rule 28-2.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Rule 32(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ninth Circuit Court of Appeals No. 08-30434

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee

vs.

BASIL PETER HERBST,

Defendant-Appellant

---

## OPENING BRIEF OF DEFENDANT-APPELLANT

---

## I. STATEMENT OF JURISDICTION

### A. Subject Matter Jurisdiction in the District Court.

The United States District Court for the District of Montana had jurisdiction over the original criminal action under Article III, Section 2, Clause 1, of the United States Constitution and 18 U.S.C. 3231 because Defendant-Appellant Basil Peter Herbst (hereafter 'Herbst' also he is know by the first name 'Pete') was charged in the District of Montana in a twenty-three count Indictment. In that Indictment, Herbst was charged with ten counts of Sexual Exploitation of

1

Children, contrary to 18 U.S.C. § 2251(a) and nine counts of Sexual Exploitation of Children, contrary to 18 U.S.C. §2251(b). Herbst was also charged with one count of Distribution of Child Pornography, contrary to 18 U.S.C. § 2252A(a)(2), one count of Transportation of Child Pornography, contrary to 18 U.S.C. § 2252A(a)(2), one count of Receipt of Child Pornography, contrary to 18 U.S.C. § 2252A(a)(2) and one count of Possession of Child Pornography, contrary to 18 U.S.C. § 2252A(5)(B). (CR 11; ER 102-117).

**B.  Jurisdiction in the Court of Appeals**.

This Court has appellate jurisdiction over this case under 28 U.S.C. § 1291 and Rule 32 of the Federal Rules of Criminal procedure because Herbst has appealed the sentence imposed in the District Court's Judgment.

**C.  Appealability of District Court Order and Timeliness of the Appeal**.

The District Court sentenced Herbst on October 29, 2008. (CR 46). The Judgment was filed on November 5, 2008. (CR 47; ER 9-15). Herbst filed his Notice of Appeal on November 10, 2008. (CR 48; ER 7-8). This was in compliance with Rule 4(b) of the Federal Rules of Appellate Procedure. (CR 49).

## II.  STATEMENT OF THE ISSUE

**A.   Whether the District Court Abused Its Discretion in Imposing
A Sentence Of 70 years Imprisonment Which Did Not Properly
Accomplish the Goals of Sentencing and Was Unreasonable.**

## III.  STATEMENT OF THE CASE

### A.      Nature of the Case

This is an appeal of the sentence imposed by the United States District

Court for the District of Montana, Billings Division, at Herbst's sentencing.

### B.      Course of Proceedings

On July 26, 2007, Herbst was arrested by the FBI after law enforcement

discovered child pornography on his computer. This arrest was pursuant to a

Criminal Complaint alleging Receipt, Possession and Production of Child

Pornography.  (CR 1; ER 118-122).  He had his initial appearance that day, waived

his preliminary examination and was detained. (PSR ¶ 2)

On August 16, 2007, Herbst was Indicted on twenty-three (23) counts

related to Child Pornography as well as a related forfeiture allegation.  (CR 11; ER

102-116) He was arraigned on August 20, 2007.  (CR 13).

On March 5, 2008, Herbst pled guilty without a plea agreement.  He pled to

all the counts in the Indictment except Counts 18, 19 and 20.  He also consented to

the forfeiture allegation.  (CR 31).

3

Both the Government (CR 44; ER 59-60) and Herbst (CR 45; ER 54-58) filed Sentencing Memorandum. Herbst Sentencing Hearing was held on October 29, 2008. He was sentenced to 360 months on Counts 1 through 16 concurrently to each other, 360 months on Count 17, consecutive to Counts 1 through 16 and 120 months on Counts 21, 22 and 23, concurrent to each other and consecutive to Counts 1 through 17 for a total of 840 months or 70 years. (CR 46; ER 9-15).

Herbst timely filed his Notice of Appeal. (CR 48; ER 7-8).

### C.    Disposition in the District Court

The district court sentenced Herbst to a 30 years imprisonment on Counts 1 through 16 concurrently to each other, 30 years on Count 17 consecutive to Counts 1 through 16 and 10 years on Counts 21, 22 and 23, concurrent to each other and consecutive to Counts 1 through 17 for a total of 70 years. (CR 46; ER 9-15).

### D.    Bail Status of Defendant-Appellant

Basil Herbst is currently incarcerated at USP Victorville, in Adelanto, California. According to the Federal Bureau of Prison's website, his projected release date is July 18, 2068. His full mailing address is set forth in the certificate of service.

4

## IV.  STATEMENT OF THE PERTINENT FACTS

In July 2007, Verna Hulit reported to the Billings Police Department that her neighbor, Pete Herbst, was having a sexual relationship with her 18 year old foster daughter, Krystal Kammerer.   Verna Hulit was also having a sexual relationship with Herbst.  (PSR ¶ 8).   Kammerer was interviewed by law enforcement at which time, she said that she and Herbst began dating when she was 17, and that he had taken nude photographs of her as well as a video of her performing fellatio on him.  (PSR ¶ 10).

On July 24, 2007, Herbst was interviewed by two Billings Police Officers, including Kathy Carson.  Herbst admitted to having sex with Kammerer after she turned 18.  He denied taking any photographs of her.  (PSR ¶ 11)  At that time Herbst consented to a search of his laptop computer which he turned over to the police.  (PSR ¶ 12).  The next day the computer was examined and 40 images of a nude girl were discovered on the hard drive.  Some of the pictures depicted the girl performing fellatio on an adult male as well as them having intercourse.  While the face of the man was not shown, he had a distinctive thumb ring as well as a tattoo on his abdomen above his genitals.  (PSR ¶ 13).

Billings Police Officer Carson, who had served in the Montana National Guard with Herbst, viewed the pictures and immediately recognized the young girl

5

in the photos as Herbst's daughter, B.H.  Further, when Herbst was interviewed on July 24th, he had been wearing an identical thumb ring as the individual in the photographs.  (PSR ¶ 15-16).  FBI agents re-interviewed Verna Hulit and showed her a picture of the young female found on Herbst 'scomputer.  She immediately recognized the girl as B.H., Herbst's daughter.   She also recognized the background in the picture and identified that as being the livingroom of Herbst's house.  (PSR ¶ 17).

Herbst was arrested on July 26th pursuant to a federal Criminal Complaint. (CR 1; ER 118-122).  He was interviewed by law enforcement agents where he admitted to taking pornographic pictures of his daughter, B.H., as well as his 10 year old niece, K.D.  (PSR ¶ 19).  A search warrant was obtained and several locations were searched with multiple items of contraband seized.  One of the items seized was a video which contained Herbst's daughter having oral and vaginal sex with Herbst as well as images of four other girls.  (PSR ¶ 22).  In examining the date stamps on the images, it appeared to law enforcement that Herbst produced child pornography on at least nineteen different occasions.  (PSR ¶ 23).  Some of those images were produced in North Dakota while the rest were produced in Montana.  (PSR ¶ 25).

B.H. was interviewed by the FBI on August 27, 2007, and admitted that she had sex with Herbst and he had photographed and videotaped them. She told law enforcement that the pictures were taken at different hotels in Montana and North Dakota as well as at their house in Billings, Montana. (PSR ¶ 26).

An initial forensic examination was conducted on Herbst's laptop computer and 4,362 images of child pornography were discovered. (PSR ¶ 27). Herbst's desktop computer was also examined and 867 images of child pornography were located. (PSR ¶ 28). On March 5, 2008, Herbst plead guilty to 20 of the 23 counts, without a plea agreement.

The Presentence Investigation Report (PSR) was prepared and the advisory guideline range was calculated. On Counts 1 through 16, the Total Offense Level was 46. (PSR ¶ 44) On Count 17, the Total Offense Level was 46. (PSR ¶ 56) And on Counts 21, 22 and 23, the Total Offense Level was 45. (PSR ¶ 67) The Multiple Count Adjustment was to level 49 (PSR ¶ 69) resulting in a Total Offense Level of 43, after the Acceptance of Responsibility adjustment. (PSR ¶ 70-71). Herbst had zero criminal history points, resulting in a criminal history category of I. (PSR ¶ 78) Ultimately, this resulted in an advisory guideline range of 'life' for all the counts.

7

By the time of Herbst's sentencing hearing, images of Herbst's daughter, B.H. had been discovered in two other Montana child porn cases and the National Center for Missing and Exploited Children had identified B.H. in cases in six other states. (CR 53; 44, ER 43, 60).

At the Sentencing Hearing, Herbst called one witness, his sister Windy, who testified to the horrible physical and sexual abuse she and Pete suffered at the hands of their father, step-mother and father's girlfriend. (CR 53 ; ER 32-34) When given the opportunity, Herbst apologized to his daughter, niece and family for the harm he had caused. (CR 53; ER 46).

The District Court then sentenced Herbst to 360 months imprisonment on Counts 1 through 16 concurrently to each other, 360months on Count 17 consecutive to Counts 1 through 16 and 120 months on Counts 21, 22 and 23, concurrent to each other and consecutive to Counts 1 through 17 for a total of 840 months or 70 years. (CR 46; ER 9-15).

## V.  SUMMARY OF ARGUMENT

Mr. Herbst's sentence is the harshest sentence a district court can impose, save the death penalty.  While it focused on punishment, permanent deterrence and protection of the public, it did so excessively and unreasonably.  The sentence affords no hope to this man, who has previously never spent even a day in jail.

8

The sentence tells Herbst that he could never rehabilitate and improve his life. It, therefore, not only imposed a sentence impermissibly "greater than necessary" to accomplish deterrence and protection, it ignored the rehabilitative needs of Herbst. It focused upon punishment but not 'just' punishment.

Although this Court is to adopt a deferential standard of review as to the district court's sentence and shows a court abusing its discretion in constructing this most severe of available sentences.

## VI. ARGUMENT

### <u>Standard of Review</u>

In the aftermath of <u>United States v. Booker</u>, 543 U.S. 220 (2005), sentencing courts must exercise their discretion to impose sentences that are "reasonable" when viewed in light of the purposes of federal sentencing – retribution, deterrence, incapacitation and rehabilitation. In fashioning a sentence "sufficient but not greater than necessary" to achieve these goals, a district court must consider five additional factors: (1) the nature and circumstances of the offense and the history and characteristics of the Defendant; (2) the kinds of sentences available; (3) the guidelines and policy statements issued by the Sentencing Commission, including the sentencing guidelines; (4) the need to

avoid unwarranted sentencing disparity; and (5) the need to provide restitution to the victim. *See*, 18 U.S.C. § 3553(a)(1)-(7).

The Ninth Circuit's review of a defendant's sentence is a two-step inquiry. First, the appellate court considers whether the district court properly calculated the applicable range under the advisory Guidelines, and second, the appellate court considers challenges to the reasonableness of the overall sentence in light of all the statutory sentencing factors, including the applicable guidelines range. <u>United States v. Barsumyan</u>, 517 F.3d 1154, 1157 (9th Cir.2008) (citing <u>United States v. Mohamed,</u> 459 F.3d 979, 985 (9th Cir.2006)); <u>United States v. Carty</u>, 520 F.3d 984, 991 (9th Cir. 2008).

The district court's calculation of the advisory sentencing guidelines range is reviewed *de novo*. <u>United States v. Cantrell</u>, 433 F.3d 1269, 1279 (9th Cir.2006). The district court's factual findings are reviewed for clear error, and its application of the guidelines to the facts is reviewed for abuse of discretion. <u>Mohamed</u>, 459 F.3d at 985; <u>Cantrell,</u> 433 F.3d at 1279.

### **Reviewablity**

In his Sentencing Memorandum, Mr. Herbst argued that the district court should not impose a sentence greater than thirty years. (CR 45; ER 57). At sentencing, Herbst made the same argument. (CR 53; ER 27) He said that

10

imposing a higher sentence would go beyond achieving the ends which are mandated under 18 U.S.C. § 3553(a). A sentence no longer than thirty years would achieve deterrence, protection of society, reflect respect for the law and be a just sentence. However, he argued that a sentence beyond that would make those listed objectives subservient to simply punishing Herbst. (CR 53; ER40-41).

**<u>Argument</u>**

One half of Benjamin Franklin's old adage, "... but in this world nothing can be said to be certain, except death and taxes" (Franklin, Benjamin, *Letter to Jean-Baptiste Leroy*, November 13, 1789) is half true for Pete Herbst. In sentencing Mr. Herbst, the District Court assured him that the only way he will ever leave prison is by dying. Pete Herbst is now spending the rest of his life in prison. Nothing less. The District Court even said, in commenting on the amount of time it had just imposed, "Now even with good time, if you were given the maximum good time that you could be given, you must serve 85 percent of this sentence. Eighty-five percent would be in excess of 60 years that you have to serve, and you're 43. That would mean that you would be 103 before you would be eligible for parole. So, in essence, it is a life sentence, but I have to make that determination in years, and that's how I calculate it." (CR 53; ER 49).

In concluding the Sentencing Hearing the Court, in justifying the sentence simply said, "Mr. Herbst, you are spending the rest of your life in prison, but your daughters are - - daughter and niece, the harm that you have done to them is irreconcilable. I mean, they are going to live with that the rest of their lives the same as you have to live with the abuse that you have had. And I, I have sympathy for both you and your sister, but you have to be taken out of society, and this sentence will do that." (CR 53; ER 51-52). There it is. The only rationale the Court gives for the 70 year sentence is that Mr. Herbst "needs to be taken out of society." The Court, if it considered any factors under 18 U.S.C. 3553(a) certainly did not let anyone else know about it.

United States v. Booker, 543 U.S. 220 (2005), establishes a new, independent limit on the sentence that may be imposed. The primary sentencing mandate of 18 U.S.C. § 3553(a) states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment - justice, deterrence, incapacitation, and rehabilitation:

> The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

18 U.S.C. § 3553(a) (emphasis added).

12

This so-called "parsimony provision" is not simply a factor to be considered in determining sentence; it represents a cap above which the Court is statutorily prohibited from sentencing – even when a greater sentence is recommended by the Sentencing Guidelines, which, per § 3553(a), are statutorily subordinate to the parsimony principle. *See*, United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).

In some cases, adequate consideration of the guidelines will require analysis of departure grounds. United States v. Menyweather, 447 F.3d 625 (9th Cir. 2006). Booker did not change the analysis used in determining whether upward or downward departure from the guidelines is warranted in any given case. Courts may still depart from the guidelines in cases involving "aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . ." *See*, 18 U.S.C. § 3553(b)(1). For instance, in Menyweather, the Ninth Circuit upheld a district court's decision to depart downward eight levels for mental and emotional condition, diminished capacity and extraordinary family circumstances.

Post-Booker, the Sentencing Guidelines are no longer mandatory, United States v. Booker, 543 U.S. 220, 260-61, 125 S. Ct. 738 (2005), and, therefore, "the 'range of choice dictated by the facts of the case' is significantly broadened." *Gall*

*v. United States,* 552 U.S. __, 128 S. Ct. 586, 601 (2007). The Sentencing Act, 18 U.S.C. § 3553(a), "nonetheless requires judges to take account of the Guidelines *together with* other sentencing goals" when fashioning a Defendant's sentence. *Booker,* 543 U.S. at 261, 125 S. Ct. 738 (emphasis added). As the Supreme Court just recently clarified in Gall, "the Guidelines should be the starting point and the *initial benchmark*" in determining a sentence and "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." 128 S.Ct. at 601.

In Herbst's case, the District Court correctly calculated the advisory guideline range.

Then the District Court must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 552 U.S. __, 127 S. Ct. 2456, 2468 (2007). Thus, "when a sentencing judge concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given Defendant, the explanation for the sentence generally need not be lengthy." *Rita,* 127 S.Ct. at 2468. "Whe[n] the Defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments."

14

Rita, 127 S.Ct. at 2468.  Finally, "[d]istrict courts must provide defendant-specific reasons for imposing a certain sentence to comply with § 3553."  United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006) (internal citation omitted). In this case, the District Court simply did not go far enough in explaining it's sentence.

The District Court, in imposing this sentence, said,

"The reasoning on the sentence and the distinction between the Lacey case is that, one, the sexual conduct was with your own natural child, your daughter, and your niece; and, two, the offenses occurred over an extended period of time, especially under relevant conduct it would be many years, but in the indictment itself it exceeds almost two years.  The damage done to the victims, because of the images that were posted on the internet, is irreparable.  And this sentence is consistent with other sentences in the district, and the sentence is necessary to protect the public from the defendant's propensity to sexually molest children."  (CR 53; ER 48-49).

Whether this life sentence avoids sentencing disparities is debatable. Whether it will help Herbst achieve rehabilitation is not.  It will not. Rehabilitation is also a goal of sentencing.  § 3553 (a)(2)(D).  That goal cannot be served if a defendant can look forward to nothing but imprisonment.  Simon v United States, 361 F. Supp.2d 35, 48 (E.E. N.Y. 2005), citing unreported case of United States v. Carvahal, 2005 WL 576125 (S.D.N.Y.).  "Rehabilitation is also a goal of punishment.  That goal cannot be served if a defendant can look forward to nothing beyond imprisonment.  Hope is the necessary condition of mankind, for

15

we are all created in the image of God. A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment." United States v. Carvajal, WL 476125 (S.D.N.Y. Feb, 222, 2005) Carvahal. This sentence provided no hope. This sentence gives up on Pete Herbst. It's overarching objective was to punish him. The district court recognized it was punitive and that seemed to be the only focus. Although certainly achieves punishment, such an attitude supersedes the goal of just punishment.

Again, a court should be hesitant before sentencing so severely that it destroys all hope and takes away all possibility of useful life. Carvahal, *supra*. Herbst's sentence satisfies some but not all of the criteria of § 3553 (a). It did not afford rehabilitation and the improvement of Herbst's life. It was excessive in its rigid adherence to the principle of the longer the sentence, the longer the deterrence. When considering this factor the court did not really attend to the initial directive of § 3553(a) that the sentence not be impermissibly "greater than necessary."

Again, this sentence provided punishment, not just punishment.

16

## VII. CONCLUSION

"There is a point beyond which even justice becomes unjust." (Sophocles, Electra, c.409 B.C.) With this sentence, Mr. Herbst has nothing to look forward to except for respectfully requests this Court to vacate the sentence imposed upon him at his sentencing and to remand this case for a re-sentencing which will properly and fully reflect the criteria of 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED this 10th day of April, 2009.

s/David A. Merchant II
DAVID A. MERCHANT II
Assistant Federal Defender
Counsel for Defendant-Appellant

17

## VIII.  CERTIFICATE OF COMPLIANCE

I hereby certify that this Opening Brief of Defendant-Appellant is in compliance with Ninth Circuit Rule 32(a).  The Brief's line spacing is double spaced.  The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14 point size and contains less than 14,000 words at an average of 280 words (or less) per page, including footnotes and quotations. (Total number of words: 3,413 excluding tables and certificates).

DATED this 10th day of April, 2009.


s/David A. Merchant II
DAVID A. MERCHANT II
Assistant Federal Defender
        Counsel for Defendant-Appellant

## IX.  STATEMENT OF RELATED CASES

The undersigned, Counsel of record for the Defendant-Appellant, pursuant to Rule 28-2.6 of the Rules of the United States Court of Appeals for the Ninth Circuit, states that, to his knowledge, there are no related cases pending in this Court.

DATED this 10th day of April, 2009.


      s/David A. Merchant II

      DAVID A. MERCHANT II
      Assistant Federal Defender
          Counsel for Defendant-Appellant

## CERTIFICATE OF SERVICE
## Fed.R.App.P. 25

I hereby certify that on April 10, 2009, I electronically filed the foregoing with the Clerk of the Court for the United States Court of appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

BASIL PETER HERBST
Reg. No. 09740-046
USP Victorville
P. O. Box 5500
Adelanto, CA 92301
    Defendant-Appellant

          s/David A. Merchant II
          DAVID A. MERCHANT II
          Assistant Federal Defender
              Counsel for Defendant-Appellant

20